Approved: _____
JARROD L. SCHAEFFER
Assistant United States Attorney

Before: HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :    **COMPLAINT**
                                    :
        -v.-                        :    Violation of
                                    :    21 U.S.C. § 846
WINDER CASILLA,                     :
                                    :    COUNTY OF OFFENSE:
            Defendant.              :    BRONX
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

RAYMOND FRATTOLILLO, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

1. In or about December 2019, in the Southern District of New York and elsewhere, WINDER CASILLA, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that WINDER CASILLA, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that WINDER CASILLA, the defendant, conspired to distribute and possess with intent to distribute was 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

1

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI. I have been personally involved in the investigation of this matter, and this affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my review of reports, and my conversations with other law enforcement officers, I have learned, in substance and among other things, that on or about December 17, 2019, a particular parcel (the "Subject Parcel") was routed to a United Parcel Service ("UPS") store located in the Bronx, New York ("Store-1"). The Subject Parcel was held for pickup at Store-1 after delivery of the Subject Parcel to the listed address for the recipient could not be completed. The Subject Parcel is a brown cardboard box with approximate dimensions of 36 inches by 36 inches, and a listed shipping weight of approximately 11 pounds. The Subject Parcel is addressed to "ANGEL MARTINEZ" at an address in the Bronx (the "Recipient Address"), and bears the return address "WINDER CASILLA" at an address in Houston, Texas (the "Return Address").

<u>Discovery of Cocaine in the Subject Parcel</u>

6. Based on my discussions with a UPS employee at Store-1 ("Employee-1"), I have learned, in substance and among other things, that the Subject Parcel could not be delivered to the Recipient Address and was therefore routed to and held at Store-1 for pickup.

7. Based on my discussions with Employee-1 at Store-1, my participation in this investigation, and my review of reports and records, I have learned, in substance and among other things, the following occurred on or about December 20, 2019:

    a. Two male individuals arrived at Store-1 and attempted to retrieve the Subject Parcel. The two individuals were asked to present identification. Only one of the individuals was able to provide identification, and the identification that he

provided did not match the listed recipient of the Subject Parcel described above.

   b.  The foregoing events, including the attempt by an individual not reflected as the listed recipient to retrieve the Subject Parcel, caused Employee-1 to become suspicious about the contents of the Subject Parcel. In light of those concerns, Employee-1 opened the Subject Parcel.

   c.  Inside the Subject Parcel, Employee-1 found another box further packaged with tape and glue ("Box-1"). Employee-1 found the manner in which Box-1 was packaged to be strange, which heightened Employee-1's suspicions about the contents of the Subject Parcel. In light of those concerns, Employee-1 opened Box-1.

   d.  Inside Box-1, Employee-1 discovered what appeared to be a portable air conditioning unit packed with Styrofoam packing material. Employee-1 noticed that a rectangular, brick-shaped object wrapped in plastic ("Object-1") was protruding from the packing material inside the air conditioning unit. Based on the appearance of Object-1 and the facts set forth above, Employee-1 contacted law enforcement.

  8.  Following the above events, and after being contacted by Employee-1, I and other law enforcement agents arrived at Store-1, accompanied by a narcotics detection dog and a certified narcotics detection canine handler ("Officer-1").

  9.  Based on my personal observations of the Subject Parcel and Box-1 that had been opened by Employee-1,[1] Object-1 appeared to be a rectangular, brick-shaped object wrapped in plastic and containing a white substance. Based on my training and experience, Object-1 appeared to be consistent with a packaged quantity of a controlled substance.

  10. Officer-1 exposed the Subject Parcel to his trained narcotics detection canine for exterior inspection, and the canine reacted to the Subject Parcel in a manner that Officer-1 understood

---

[1] Law enforcement agents observed the contents of the Subject Parcel and Box-1 only as revealed as a result of the prior actions of Employee-1. Law enforcement agents did not further open the Subject Parcel or Box-1 until the search warrant referenced below was issued.

to indicate the presence of narcotics.[2] Law enforcement then secured the Subject Parcel.

11. On or about that same day, December 20, 2019, United States Magistrate Judge Kevin N. Fox authorized a search warrant for the Subject Parcel.

12. After the warrant to search the Subject Parcel was obtained, HSI submitted Object-1 for field testing. Object-1 tested positive for cocaine, and weighed approximately 1 kilogram.

### Arrest of the Defendant

13. Based on my participation in this investigation, including my review of reports and records, as well as my participation in surveillance of Store-1 and my discussions with employees at Store-1, I have learned, in substance and among other things, the following:

    a. On or about December 23, 2019, law enforcement contacted by phone the listed sender of the Subject Parcel — that is, "WINDER CASILLA," at the phone number provided in connection with the Return Address, who was later confirmed, as described below, to be WINDER CASILLA, the defendant — and informed CASILLA that the Subject Parcel could not be delivered to the Recipient Address in the Bronx.

    b. In response to that notification, and although the Return Address associated with CASILLA for the Subject Parcel is a location in Texas, CASILLA stated, in sum and substance, that he was in New York and would pick up the package that day.

---

[2] I am informed by the canine's handler that the canine is a Malinois, originally certified as a narcotics detection canine after completing certification with the New York City Police Department's Department of Criminal Justice Services in June 2010 to detect the odors of marijuana, cocaine, heroin, and methamphetamines. The canine was last certified in October 2017 and is routinely used to conduct searches of automobiles, residences, packages and suitcases. The canine will positively alert his handler to the presence of the odor of marijuana, cocaine, heroin, and methamphetamines. He has successfully given positive indications of narcotics in the field in the past and generally has proven reliable in the field. Therefore, there is probable cause to believe that the canine is reliable and that the Subject Parcel contains a controlled substance or its residue.

    c. Later that day, law enforcement agents observed CASILLA arrive at Store-1.

    d. After entering Store-1, CASILLA inquired about the Subject Parcel and stated, in sum and substance, that he was the sender of the Subject Parcel and wished to retrieve it. CASILLA also showed identification and a copy of a UPS receipt for the Subject Parcel.

    e. A law enforcement agent gave the Subject Parcel to CASILLA, who took the Subject Parcel and exited Store-1. Law enforcement agents arrested CASILLA after he exited Store-1 carrying the Subject Parcel.

 WHEREFORE, I respectfully request that WINDER CASILLA, the defendant, be imprisoned or bailed as the case may be.

_____
RAYMOND FRATTOLILLO
Special Agent
HSI


Sworn to before me this
26th day of December, 2019

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK